IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES M. BUCEK, | : | Civil Action No.: 2:22-CV-940 |
| Administratrix of the ESTATE OF | : | |
| MARTIN A. BUCEK, deceased, | : | COMPLAINT IN CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLEGHENY COUNTY, ORLANDO | : | |
| L. HARPER, and LAURA WILLIAMS, | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**COMPLAINT IN CIVIL ACTION**

AND NOW comes the Plaintiff, Dolores M. Bucek, Administratrix of the Estate of

Martin A. Bucek, deceased, by and through her attorneys, Anthony C. Mengine, Esquire, Katie

A. Killion, Esquire, and Kontos Mengine Killion & Hassen, and files the following Complaint in

Civil Action:

1.      Plaintiff, Dolores M. Bucek, is an adult individual who has been appointed

Administratrix of the Estate of Martin A. Bucek, deceased, by the Register of Wills of

Allegheny County, Pennsylvania at No. 022105990. She has an address at 157 Kay Street,

Pittsburgh, Pennsylvania 15223.

2.      Plaintiff's Decedent, Martin A. Bucek, deceased (hereinafter "Mr. Bucek or

"Decedent"), was born on January 17, 1966, and died on July 3, 2021.

3.      Defendant, Allegheny County, is a municipality and exists pursuant to the laws

of the Commonwealth of Pennsylvania.

4.     Upon information and belief, Allegheny County owned, possessed, was in control of, and/or was in some way responsible for the operation of the Allegheny County Jail (hereinafter "Jail") located at an address at 950 2nd Avenue, Pittsburgh, Pennsylvania 15219.

5.     Defendant Orlando L. Harper was the acting Warden of the Allegheny County Jail at all times relevant hereto and as such, he was responsible for the development and implementation of policies regarding all aspects of said Jail's operation.

6.     Defendant Laura Williams was the former acting Chief Deputy Warden of the Allegheny County Jail at all times relevant hereto and as such, she was responsible for the development and implementation of policies regarding all aspects of said Jail's medical services.

7.     The right to bring these actions is conferred upon the Plaintiff by virtue of the provisions of Pennsylvania's Wrongful Death Act, Survivor Act and other applicable Wrongful Death Acts, Fiduciary Acts, and/or Pennsylvania Rules of Civil Procedure.

8.     This action is brought to recover damages for and on behalf of

a.   Justin Bucek – Son.

9.     Plaintiff's Decedent did not bring an action against the Defendants for damages during his lifetime for the injuries which ultimately resulted in his death.

10.     No other actions for wrongful death of Plaintiff's Decedent or for damages for the injuries causing Plaintiff's Decedent's death have been commenced against Defendants other than this action.

11.     At all relevant times hereto, the Defendants acted through their agents and employees acting within the course and scope of their agency and/or employment.

12.     On June 18, 2021, Martin Bucek attempted to commit suicide by cutting his wrists with a box cutter. Subsequently, he sought treatment at UPMC Presbyterian Hospital and received stitches.

13.     Shortly after, on June 22, 2021, Mr. Bucek received treatment for his depression at St. Clair Hospital. While there, Mr. Bucek repeatedly stated that he wanted to kill himself and requested to be admitted into the psychiatric unit. The medical records noted Mr. Bucek made continuous pleas of "Please help me!" to several medical providers assisting him. St. Clair Hospital opted to discharge Mr. Bucek.

14.     That same day, Mr. Bucek assaulted a staff nurse in a supply closet.

15.     On June 24, 2021, Mr. Bucek was arrested and subsequently incarcerated at the Allegheny County Jail.

16.     Mr. Bucek suffered from a documented diagnosis of schizoaffective disorder and generalized anxiety disorder. Medical records, in possession of the Defendant, noted his intense erratic behavior, caused by his symptoms, and his suicidal tendencies.

17.     The employees, servants and medical staff of Defendants were or should have been acutely aware of Mr. Bucek's medical conditions, were on notice of his need for medical assistance and his particular vulnerability to suicide.

18.     Upon information and belief, Mr. Bucek informed the jail staff of his suicidal ideologies, and previous suicide attempts including overdosing, jumping off a bridge, and stabbing himself.

19.     Despite this, Mr. Bucek was admitted under regular observation status.

20.     Upon information and belief, on June 25, 2021, Mr. Bucek was evaluated by Defendant's medical personnel who reported he suffered from depression and paranoia. Medical records, kept by Defendants, noted Mr. Bucek endorsed suicidal ideations, was very depressed, felt hopeless, and was experiencing panic attacks and auditory hallucinations (including commands). Mr. Bucek was prescribed several medications, including Lexapro, Haldol, and Vistaril.

21.     On June 25, 2021, Mr. Bucek was placed on "suicide watch".

22.     The next day, on June 26, 2021, Mr. Bucek was released from "suicide watch" despite the fact there was no change in his mental status noted.

23.     On June 28, 2021, one of Defendant's employees noted Mr. Bucek's right hand appeared to be bleeding, as he had been continuously banging on his cell door since his arrival at the unit. That same day, Mr. Bucek was evaluated by Defendant's psychiatric personnel in his cell for agitated behaviors, including a self-inflicted right eye injury.

24.     Defendant's medical records noted that he was a danger to himself and others.

25.     Despite these observations, Mr. Bucek remained on regular observation status.

26.     On June 29, 2021, Defendant's staff visited Mr. Bucks' pod to evaluate several injuries he self-inflicted the day before.

27.     It was reported he had hit his head multiple times on the door, self-injured his right eye by poking with his finger which resulted in "black spots" in his vision, and violently poked a spoon multiple times in both ears which caused bleeding.

28.     Despite his erratic, self-harming behavior, Mr. Bucek was not moved to close observation status, also known as "suicide watch".

29.     On July 1, 2021, records noted Mr. Bucek was seen on his bunk, screaming "kill me." When medical staff arrived to evaluate, Mr. Bucek was described as "psychotic", "sweaty", and "unable to calm down."

30.     Despite his erratic, self-harming behavior, Mr. Bucek was not placed on "suicide watch".

31.     On the morning of July 3, 2021, Mr. Bucek was seen in his cell screaming and was unable to communicate. Defendant's staff scheduled an onsite appointment with optometry

to further treat Mr. Bucek's eye injury, but later decided against the appointment offsite "due to unpredictable behavior/paranoia/psychosis/suicidal/homicidal ideations/self-injuries."

32.     Despite his erratic behavior, Mr. Bucek's observation status remained unchanged.

33.     Later that same day, at or around 3:40 p.m., Mr. Bucek refused to give Defendant's employees a tray and spoon. He was reported to be extremely agitated and refused all medication.

34.     According to Defendant's records, Mr. Bucek was reportedly seen standing at his cell door at 5:00 p.m.

35.     At 5:14 p.m., a group of Defendant's employees came to Mr. Bucek's cell to administer medications. Once his cell was opened, they reportedly found Mr. Bucek laying on the floor unresponsive.

36.     Upon information and belief, Defendant's employees suspected that Mr. Bucek's airways had become compromised with food. A clear gray matter consistency was suctioned from his airway.

37.     Defendant's employees and medical staff began CPR, but their efforts were unsuccessful.

38.     Mr. Bucek was pronounced dead at 6:00 p.m.

39.     An autopsy revealed that Mr. Bucek's cause of death was asphyxia due to airway obstruction. The medical examiner determined food bolus had completely obstructed Mr. Bucek's upper airway.

40.     The Allegheny County Jail has a history of suicides occurring while inmates are in their custody including, but not limited to, the following incidents:

      a.   Jeffrey Michael Heil was found hanging in his cell in July 2016; and

     b.   Daniel Pastorek was found unresponsive in his cell in November 2020.

41.    This stated history reflects systematic violations of inmates' Constitutional rights, particularly violations of the Fourth, Eighth and Fourteenth Amendments as set forth further below.

## COUNT I – 42 U.S.C. §1983
### *Dolores M. Bucek, Administratrix of the Estate of Martin A. Bucek, deceased, v. Allegheny County*

42.    Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

43.    By taking Mr. Bucek into its custody, the Defendant entered into a special relationship with him, which imposed upon Defendant affirmative duties of care and protection of Mr. Bucek and obligated said Defendant not to cause injury or harm to Mr. Bucek while he was in the custody and control of the Defendant.

44.    Mr. Bucek suffered injuries and damages, as more fully stated below, as a result of defective policies, procedures, practices, customs, directives and/or administrative procedures (hereinafter referred to as "policies" or "policy") of the Defendant, Allegheny County, as follows:

     a.   A policy of permitting, encouraging, or condoning the inadequate supervision of inmates with medical problems such as Plaintiff's Decedent as set forth above;

     b.   A policy of failing to require a proper medical examination or care given to an inmate when an inmate states that they are suicidal and require medical attention;

     c.   A policy of failing to adequately train its correctional officers to detect and address medical needs of inmates;

     d.   A policy of failing to supervise correctional personnel pertaining to the securing of medical care of inmates;

     e.   A policy of failing to require that inmates receive medical care from

competent medical professionals;

f. A policy failing to provide adequate training to its officers and employees concerning the proper supervision of inmates with medical needs or health problems;

g. A policy of failing to train its correctional officers to recognize serious medical conditions or problems and the need to place an inmate on "suicide watch"; and

h. Other defective policies concerning the detention and supervision of inmates, as to be determined by discovery.

45. The Defendant's conduct constitutes reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's Decedent in the following particulars:

a. By its failure to adequately train, supervise, monitor and/or discipline its officers and/or employees as set forth above to avoid violations of inmates' constitutional rights;

b. By its failure to correct (through training, discipline, monitoring, policy changes, etc.) its employees' conduct; and

c. By its failure to investigate and determine whether its officers and/or employees were complying with its policies and/or customs, and/or violating inmates' Constitutional rights.

d. By its failure to correct defective policies and/or training procedures, despite being put on notice to these defective policies and/or training procedures by recent occurrences similar to the one mentioned above; and

e. The intentional act of ignoring the stated communications regarding Plaintiff's Decedent's medical needs and its failure to access its own records when the said medical needs were communicated.

46. The above actions of the Defendant were the direct and proximate cause of the injuries sustained to Mr. Bucek's person, in that they increased the risk of these injuries occurring, including but not limited to:

a. Erratic behavior that led to suicide;

    b.   Extended pain and suffering; and,

    c.   Death.

47.    By reason of the aforesaid, Mr. Bucek's civil rights were violated, including but not limited to those guaranteed under the Eight and Fourteenth Amendments to the Constitution of the United States in the following particulars:

    a.   Mr. Bucek's substantive right to be free from cruel and unusual punishment and to be free from punishment prior to adjudication without due process of law under the Eight and Fourteenth Amendments were violated;

    b.   Mr. Bucek's rights to procedural due process under the Fourteenth Amendment was violated; and

    c.   Mr. Bucek's substantive constitutional rights guaranteed under the Fourteenth Amendment was violated; and

    d.   Mr. Bucek's rights guaranteed under the Fourth Amendment.

48.    As a result of the above-stated injuries, Mr. Bucek, suffered the following damages:

    a.   Pain, suffering, mental anguish and inconvenience; and

    b.   Loss of wages, loss of earning capacity.

49.    Plaintiff claims on behalf of the Estate any and all damages to which recovery may be made under § 8302 et al., which include but are not limited to the following:

    a.   Decedent's pain, suffering, mental anguish, inconvenience and other such damages that are permitted by law;

    b.   Decedent's total estimated future earning capacity;

    c.   Decedent's loss of income;

    d.   Other financial losses suffered as a result of Decedent's injuries and death; and

    e.   Any and all expenses incurred by Decedent's Estate.

WHEREFORE, the Plaintiff demands judgment in her favor against the Defendants for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

## COUNT II – 42 U.S.C. §1983
### *Dolores M. Bucek, Administratrix of the Estate of Martin A. Bucek, deceased*
### *v. Orlando L. Harper*

50.     Plaintiff hereby incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

51.     At all times relevant hereto, Defendant Orlando L. Harper was an agent of Defendant Allegheny Country acting in the course and scope of his employment and engaged in the performance of his duties as the Warden for the Allegheny County Jail.

52.     At all times relevant hereto, Defendant Harper was acting under the color of law pursuant to his authority as an officer of the Defendant, Allegheny County.

53.     As Warden, Defendant Harper was the commanding officer of all other officers working at the Allegheny County Jail, was responsible for the implementation and promulgation of the policies and customs of the Jail, and was further responsible for the training, conduct, and supervision of the officers and employees of the Jail.

54.     As Warden, Defendant Harper was a policy maker for the Jail, and therefore it was his duty, at all times relevant hereto to see that there were laws, ordinances, policies, procedures, practices, customs, directives and/or other administrative procedures in place which assured that prisoners taken into custody at Allegheny County Jail were not deprived of their constitutional rights. It was also his duty to see that such laws, ordinances, policies, procedures, practices, customs, directives and/or other administrative procedures were actually followed by all Jail personnel or contractors.

55.    At all times relevant hereto, Defendant Harper had actual and/or constructive knowledge of the policies and customs set forth above, and that said policies and/or customs deprived and/or violated the constitutional rights of inmates such as Plaintiff's Decedent.

56.    It was the duty of Warden Harper, while Mr. Bucek was under his supervision and in his custody, to assume responsibility for his safety and general well-being. Notwithstanding the aforesaid duty, the Defendant's wrongful acts consisted of the following:

  a. In failing to adequately train, supervise, monitor, or discipline officers where the need for more or different training, supervision, monitoring or discipline was obvious;

  b. In failing to correct (through training, discipline, monitoring, policy changes, etc.) Jail employees' conduct; and

  c. In failing to investigate whether the Jail's officers and/or employees were complying with its policies and/or customs, and whether said policies or customs in place were adequate.

  d. In failing to correct defective policies and/or training procedures, despite being put on notice to these defective policies and/or training procedures by recent occurrences similar to the one mentioned above; and

  e. In ignoring the stated communications regarding Plaintiff's Decedent's medical needs and its failure to supervise an inmate whose self-injurious behavior was evident.

57.    The Defendant's conduct constitutes reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's Decedent in the following particulars:

  a. His failure to adequately train, supervise, monitor, or discipline officers and/or employees as set forth above to avoid violations of inmates' constitutional rights;

  b. His failure to correct(through training, discipline, monitoring, policy changes, etc.) his employees' conduct;

  c. His failure to investigate whether his officers and/or employees were complying with the policies and/or customs, and/or violating inmates' constitutional rights; and

    d.  The intentional act of ignoring the stated communication regarding Plaintiff's Decedent's medical needs and his failure to meet said medical needs.

58.    The above actions of the Defendant were the direct and proximate cause of Mr. Bucek's injuries and death, in that they increased the risk of harm to Mr. Bucek, harm which he did in fact sustain and which ultimately led to his death.

59.    By reasons of the aforesaid, Mr. Bucek's civil rights were violated, including but not limited to those guaranteed under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States in the following particulars:

    a.  Mr. Bucek's substantive right to be free from cruel and unusual punishment and to be free from punishment prior to adjudication without due process of law under the Eighth and Fourteenth Amendments;

    b.  Mr. Bucek's rights to procedural due process under the Fourteenth Amendment;

    c.  Mr. Bucek's substantive constitutional rights guaranteed under the Fourteenth Amendment; and,

    d.  Mr. Bucek's constitutional rights guaranteed under the Fourth Amendment.

60.    As a result of the Defendant's conduct as aforesaid, Mr. Bucek sustained the injuries and damages set forth in Count I above, which are incorporated by references as though more fully set forth herein.

WHEREFORE, the Plaintiff demands judgment in her favor against the Defendants for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

### COUNT III– 42 U.S.C. §1983
*Dolores M. Bucek, Administratrix of the Estate of Martin A. Bucek, deceased*
*v. Laura Williams*

61.    Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

62.     Having taken Mr. Bucek into custody, the Defendant, acting under color of law, entered into a special relationship with him, which imposed affirmative duties of care and protection of Mr. Bucek and obligated Defendant not to cause injury or harm while he was in the custody and control of the Defendant.

63.     In the scope of her employment, Defendant was responsible for oversight and administration of the provision of medical healthcare at Allegheny County Jail, staff training, and ensuring accommodations for incarcerated people with physical or psychiatric disabilities.

64.     It was the duty of this Defendant, as Chief Deputy Warden, while Mr. Bucek was within the care and custody of Allegheny County, to provide for his safety and general well-being.

65.     Mr. Bucek suffered the aforesaid injuries and damages complained of as a result of defective policies, procedures, practices, customs, directives and/or administrative procedures (hereinafter referred to as "policies" or "policy") of the Defendant, Laura Williams, as follows:

    a. A policy of permitting, encouraging or condoning the inadequate supervision of inmates with serious medical problems such as Mr. Bucek, as set forth above;

    b. A policy of failing to require a proper medical examination or care be given to an inmate when an inmate states that they have serious medical conditions or an inmate states that they are suicidal;

    c. A policy of failing to adequately train agents/employees to detect and properly address medical needs of inmates;

    d. A policy of failing to supervise agents/employees pertaining to the securing of medical care of inmates;

    e. A policy of failing to require that inmates receive medical care from competent medical professionals;

    f. A policy of failing to require close observation for an inmate who has demonstrated suicidal intentions;  and

g.   Other defective policies concerning the detention of inmates, as to be determined by discovery.

66.   The Defendant's conduct constitutes reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's Decedent in the following particulars:

a.   By its failure to adequately train, supervise and/or monitor agents and/or employees as set forth above;

b.   By its failure to correct (through training, discipline, monitoring, policy changes, etc.) employees' conduct;

c.   By its failure to investigate and determine whether agents/employees were complying with its policies, and/or customs, and/or violating inmates' constitutional rights; and

d.   By its failure to correct defective policies and/or training procedures by recent occurrences similar to the one mentioned above.

67.   The above actions of the Defendant were the direct and proximate cause of Mr. Bucek's injuries and death, in that they increased the risk of harm to Mr. Bucek, harm which he did in fact sustain and which ultimately led to his death.

68.   By reason of the aforesaid, Mr. Bucek's civil rights were violated, including but not limited to those guaranteed under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States in the following particulars:

a.   Mr. Bucek's substantive right to be free from cruel and unusual punishment and to be fee from punishment prior to adjudication without due process of law under the Eighth and Fourteenth Amendments;

b.   Mr. Bucek's rights to procedural due process under the Fourteenth Amendment;

c.   Mr. Bucek's substantive constitutional rights guaranteed under the Fourteenth Amendment; and,

d.   Mr. Bucek's constitutional rights guaranteed under the Fourth Amendment.

69.     As a result of the Defendant's conduct as aforesaid, Mr. Bucek sustained the injuries and damages set forth in Count I above, which are incorporated by references as though more fully set forth herein.

WHEREFORE, the Plaintiff demands judgment in her favor against the Defendants for an amount in excess of the applicable Federal Jurisdictional limits, exclusive of interest and costs.

Respectfully submitted,

 s/ *Katie A. Killion*
Katie A. Killion, Esquire
PA I.D. No. 205203
KONTOS MENGINE
KILLION & HASSEN
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA  15222
(412) 709-6162
(412) 904-3820/facsimile

**VERIFICATION**

THE UNDERSIGNED, DOLORES M. BUCEK, Administratrix of the Estate of MARTIN A. BUCEK, avers that the statements of fact contained in the foregoing Complaint are true and correct to the best of her knowledge, information and belief, and are made subject to the penalties of 18 Pa. Cons. Stat. Ann. §4904 relating to unsworn falsification to authorities.

Date:  June 28, 2022____                           s/Dolores  Bucek_____
                                                   Dolores M. Bucek,
                                                   Administratrix of the Estate of
                                                   Martin A. Bucek